IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 2 3 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MANUEL CRUZ-ISLAS, | § | |
| MOVANT-DEFENDANT, | § | CIVIL NO. B-02-CV-105 |
| VS, | § | CRIM. NO. B-99-CR-263-001 |
| UNITED STATES OF AMERICA, | § | HONORABLE FILEMON VELA, |
| RESPONDENT. | § | CHIEF JUDGE |

---

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE

---

COMES FORTH movant-defendant Manuel Cruz-Islas with his timely reply-response to government's opposition response to defendant's 28 USC § 2255 Collateral Attack.

Movant asserts and the government failed to dispute that his claim is not procedural barred.

Movant states for the record that respondent AUSA Jeffery A. Babcock either misrepresented to the Court on his response to defendant's §2255 motion the issues presented or failed under Rule 5(a) of the Rules Governing Section §2255 to properly respond to the actual allegations made be the defendant.

-1-

Movant invites the attention of the Court to defendant's pro-se brief in support of his motion. In his motion, movant presented three issues:

    1.01.    Ineffective Assistance of Counsel.

    2.01.    USSG Amendment 632 to 2L1.2(a).

    3.01.    Ineffective Assistance of Appellate CJA Counsel.

The government on his response which contained 18 pages, listed a number of discrepancies that movant either did not raise on his brief or were deliberately misrepresented to the Court.

INEFFECTIVE ASSISTANCE OF COUNSEL:

Movant persist on his claim of ineffective assistance of counsel during the limited remand. Movant asserts to have received "limited representation" instead of a limited remand.

Movant asserts and the government supports on his response that no other issues should have been raised other than those under limited remand. See Gov. Res. at pages 7;9;10 and 11. However, defense counsel did not only remained inert and below objective standard after the open Court reprimand based on the Court's belief that defense counsel or the Public Defender's Office had made numerous misrepresentations to the Court of Appeals that compromised the Court's integrity. See S.T. from 1-6.

Movant relies on his memorandum in support for his claim of ineffective assistance of counsel. The issues presented are not "vague & conclusory", where in fact, movant asserts that had counsel been able to explain to the Court that the Fifth Circuit Court's Mandate was supported by current case law and that it was not his fault that the Fifth Circuit had reversed for further review. On the other hand, defense counsel could have, but failed to present all favorable evidence in support of the downward departure according to the Court's mandate.

The evidence that movant asserts defense counsel should have investigated, presented or prepare were:

    A.    Defendant's Marriage Certificate.

    B.    Surgery Reports of Dr. Pacheco-Serrant, M.D.
          Dated: October 14,1998. First Surgery.
          Dated: March 9,1999. Second Surgery.
          Dated: March 11, 2002. Latest Surgery that left movant's wife handicap .

    C.    Proof the Defendant had not violated the State of Texas law while on reentry and his intent to promptly return to Mexico.

Per the reading of the resentencing transcripts, it's obvious to see that the Court had problems understanding the non-English speaking inexpert self represented defendant, while defense counsel was hiding his face from the furious judge.

The fact that defendant was deported after a second degree felony conviction without the benefit to contest his deportation proceedings and after a few weeks from his deportation, movant's wife suffered from a back surgery operation and while movant was in Mexico working on construction he was informed that his wife had been rushed to the hospital and that his children had been left alone and unattended, movant risked his liberty by crossing the line and being in the State during his wife's therapy.

The government wrongfully states at page 5-6 that on November 1998 movant had been arrested in Port Isabel, Texas for possession of cocaine. This serves bases for movant's claim of ineffective assistance of counsel for failure to have clarified in court that defendant was found innocent of such allegation per Mr. Antonio Zavaleta's testimony in which he took full responsibilities for the dope found on his own car.

Movant asserts and the government has failed to dispute that per the lack of preparation, movant was not only deprived of a fair opportunity to receive a "downward departure" but instead received after the hearing a harsher sentence of 96 months.

Unknown to all, the Court, government and mainly defense counsel; the USSG Commission on November 2000,

-4-


was preparing to amend 2L1.2(a) to eliminate Circuit Court conflict under U.S. v Sanchez-Rodriguez 161 F3d 556 (9th. Cir. 1998) which holds that Application Note 5 to 2L1.2 does not limit the circumstances under which a downward departure from 16 Level enahncement is warranted and U.S. v Tappin, 205 F3d 536 (2nd. Cir. 2000) which held that the defendant must satisfy all three criteria set forth in Application Note 5 in 2L1.2 to receive a downward departure from the 16 level enahncement.

This Amendment became effective on November 2001 and serves the purpose for the issues presented. Defense counsel could have, but failed to properly present and argue at least the criteria established under Application Note 5 in 2L1.2(a)(1). Defense counsel would not known what Application Note 5 would be had it bite him while he was under the table hiding from the Judge.

The Supreme Court held in Glover v United States, 121 S.Ct. 696,700-01 (2001) that prejudice is presumed where per defense counsel's mistakes, the defendant received a harsher sentence than that which he would have received absent defense counsel's mistakes.

Defense counsel rebuffed defendant's suggestions for him to investigate and prepare the necessary material information in support of the "extraordinary circumstances" to support a downward departure. Instead, defense counsel

placed inexpert non-English speaking defendant before a furious Judge to attempt to present the extraordinary circumstances for downward departure.

Movant herein attempts to present favorable material information that he asserts had defense counsel presented this before the Court during the limited remand hearing, the outcome of th proceeding could have been deferent. See United States v Philips, 210 F3d 345 (5th. Cir. 2000) cited in Glover, Supra.

Movant incorporates copies of:

A.  Marriage Certificate.

B.  October 14,1998 Back Surgery of his wife.

C.  March 9, 1999 Second Back Surgery.

D.  March 11, 2002 Final Back Surgery that left movant's wife paralyzed for life.

The Court had serious doubts about the information being provided during the pro-se inexpert representation of defendant on September 15,2000. Defense counsel never rose a voice or opinion on attempt to clarify any discrepancies created by the inexpert defendant before the Judge. Movant navigated throughout the entire limited remand with limited assistance of counsel or no assistance at all!

DOWNWARD DEPARTURE:

Movant relies on current USSG § Amendment 632 to §2L1.2(a) for downward departure based on extraordinary circumstances surrounded on the sole reasons movant opted to reenter the United States.

Application Note 5 listed three step criteria. Movant asserts to qualify for both, a downward departure under the extraordinary circumstances and the fact that the non-contested deportation proceedings were for a second degree felony and not an aggravated felony conviction. The "one size fits all" standard should not apply to the case at chief where defendant was convicted for mere possession of .3 grams of controlled substance. Simple personal possession of a drug should not be considered an aggravated felony.

In the alternative, movant contest the legality of the prior conviction and holds the government to the burden of proof as under 21 USC §851. Movant asserts that the non-contested deportation proceedings in combination with non-counsel representation deprived defendant of the equal protection clause. The government failed to file a notice of intent or proof beyond reasonable doubt that the prior conviction was in fact an aggravated and valid prior conviction.

Movant acknowledges that this might be an issue of first impression (notice of enhancement) under 8 USC §

-7-

1326(a) or (b)(1)(A).

In fact, there is a number of cases that because the failure of the timely notice of intent and proof of aggravated felony conviction, numerous illegal aliens have been enhanced pursuant to 2L1.2(b)(1)(A) when there were no aggravated felony conviction or where there were a minor drug offense. Movant's second degree drug possession should have never been used for deportation and thereafter for 16 upward level enhancement.

USSG Amendment 632 should apply to defendant's case and reconsideration of a downward departure should apply based on both, the three step criteria under Application Note 5 and the extraordinary circumstances surrounded in this case. Movant careful and respectfully prays the Courts to properly elaborate and consider the fact that not only the reason he re-entered the United States were due to emergency family matter but the fact that per the initial back surgery of defendant's wife, she is now on her third back surgery and is left confined to a wheel chair with her children unattended.

Movant relies on Amendment 632 to §2L1.2 for reconsideration of downward departure and his prompt release from prison to return to work in Mexico to help care for his wife and children.

INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL:

Movant asserts and the government failed to dispute the fact that defense-appellate counsel abandoned the sole issue on limited remand and opted to raise (preserve) an Apprendi issue instead.

Movant relies on United States v Landeros-Arreola, 260 F3d 407,410 (5th. Cir. 2001) and persist that the 2nd. degree, simple possession of cocaine (less than .3 grams) should not have been counted as an aggravated felony under the first time offender.

As stated on defendant's original memorandum and supported on the government's response; the "limited remand" was solely to evaluate the extraordinary circumstances issues, not the Apprendi argument raised on direct appeal.

Movant asserts that appellate counsel could have, but failed to preserve any abuse of discretion, lack of good faith interest from the Court to consider the extraordinary circumstances involved in the matter and the due process violation where the Court accused, open court reprimanded and prevented counsel from participating on the limited remand issues to an extent to deprive the defendant of a fair trial.

Movant asserts to have received ineffective assistance of counsel on direct appeal.

PRAYER

WHEREFORE movant Manuel Cruz-Islas hereby care and respectfully prays the Courts for full consideration of defendant's constitutional issues and his pro-se pleadings, taking together with all other relief the Court deems just and proper.

CERTIFICATE OF SERVICE

Movant declares to have served below listed:

UNITED STATES ATTORNEY'S OFFICE
A.U.S.A. JEFFERY A. BABCOCK
P.O. BOX 61129
HOUSTON, TEXAS 77208-1129

PROOF OF SERVICE

RESPECTFULLY PRESENTED this 16th. day of July 2002 pursuant to the prison legal standard set forth under Houston v Lack, 487 U.S. 266 (1988) and on this day I declare to have served the Clerk of the Court with an original and two copies of said reply-response.

*Manuel Cruz Islas*

Manuel Cruz-Islas pro-se
Reg. No. 86510-079
United States Penitentiar
P.O. Box 26030 D/B Unit
Beaumont, Texas 77720

c.c. files



**The State of Texas**
**No. B 97-1858**
**Marriage License**
**County of Cameron**

To Any Person Authorized by the Laws of the State of Texas to Celebrate the Rites of Matrimony in the State of Texas, Greeting.

**You are hereby Authorized to Solemnize the**
**RITES OF MATRIMONY**

Between Mr. MANUEL CRUZ

and Miss MARIA DE LOS ANGELES VEGA

and make due return to the Clerk of the County Court of said County within thirty days, thereafter certifying your action under this License. **Witness** my official signature and seal of office.

Brownsville, Texas, the 12TH day of NOVEMBER 19 97 at 2:40 P.M.

_Joe G. Rivera_   Clerk of County Court
By _Erika de la Cruz_   Deputy
ERIKA DE LA CRUZ
Cameron County, Texas

I hereby certify that on the 17 day of November 19 97 at 3:00 xxxxxx/p.m. I united in marriage the parties above named.

**Witness** my hand, this 17 day of November 19 97

_____   _____   Justice of the Peace
WITNESS                  NAME                    TITLE

P.O. Box 1563, Port Isabel, Texas 78578 / CAmeron
WITNESS                                           COUNTY

Returned and filed for record the 2ND day of DECEMBER 19 97 and recorded the 2ND day of DECEMBER 19 97 in Book 199 Page 330

By _Martha C. Morales Sanchez_   _Joe G. Rivera_
MARTHA C. MORALES-SANCHEZ         County Clerk
Deputy

**Marriage License**  B 97-1858

Mr. MANUEL CRUZ and Miss. MARIA DE LOS ANGELES VEGA

MR. & MRS. MANUEL CRUZ
BOX 4112
PORT ISABEL TX   78578

*The marriage ceremony may not take place during a 72-hour period immediately following the issuance of the marriage license unless an applicant is on active duty in the U.S. Armed Forces or an order of a district court or county court with family law jurisdiction is obtained. See Sec. 1.82, V.T.C.A. Family Code.*

*Information regarding Acquired Immune Deficiency Syndrome and Human Immodeficiency Virus has been distributed as required by Sec. 1.07(e) Texas Family Code.*

*This marriage license expires at end of the 30 day period immediately following the date that the license was issued, if the marriage ceremony has not been conducted within that period.*

Date license issued _____ NOVEMBER 12TH, 1997

Time issued (H.B. 1213—72 hrs.) _____ 2:40 P.M.

Proxy for absent applicant (if applicable) _____ N/A

Date of birth of male SEPTEMBER 4, 1961  Place of birth of male POSA RICA VERACRUZ, MEXICO

Date of birth of female OCTOBER 5, 1965  Place of birth of female BROWNSVILLE, TEXAS

BROWNSVILLE MEDICAL CENTER

**PATIENT NAME:** VEGA, ANGIE
**NUMBER:** 83966
**PHYSICIAN:** HELSON PACHECO-SERRANT, M.D.
**DATE OF OP:** 10/14/98
**ROOM:**
**AGE:**
**SEX:** F

## OPERATIVE REPORT

PREOPERATIVE DIAGNOSES:

POSTOPERATIVE DIAGNOSES:

OPERATION:

SURGEON:      HELSON PACHECO-SERRANT, M.D.
ASSISTANT:

ANESTHETIST:
ANESTHESIA:

FINDINGS: This is a 33-year-old female patient with history of back pain and right leg radiation with weakness, who was treated by a chiropractor and did not improve. The patient comes with intractable pain. The patient was admitted and had workup done which revealed lumbar herniated disk at the L5-S2 level with nerve impingement. The patient was taken to the operating room for laminectomy and diskectomy.

DESCRIPTION OF OPERATION:
Under sterile and controlled conditions, with the patient under general endotracheal anesthesia, she was positioned in the Cloward frame in the prone position. All the pressure areas were padded. The lower back skin area was scrubbed and draped in the usual manner. The a lower skin incision was done using the Colorado needle. Dissection was carried down using electrocautery until the L5-S1 laminae were exposed. Intraoperative x-rays were ordered to verify the level. A L5 hemilaminectomy and S1 hemilaminectomies were done using the Anspach drill. The nerve root was identified and retracted medially and protected with nerve retractor. The disk space was identified and was opened using a #11 blade. All the

CONTINUED............OPERATIVE REPORT

69

BROWNSVILLE MEDICAL CENTER

**PATIENT NAME:** VEGA, ANGIE

**PHYSICIAN:** HELSON PACHECO-SERRANT, M.D.

**OPERATIVE REPORT/CONT. PAGE 2**

available disk material was removed using different pituitary rougeurs. The root was verified to be without any compression. Copious irrigation with antibiotics was done.

Hemostasis was completed. The wound was closed in anatomical layers using Vicryl 2-0 and nylon 4-0 for the skin level.

Estimated blood loss was 50 cc and the patient tolerated the procedure well.

#7847
D: 04/15/99
T: 04/16/99
TR: cdc

_____
HELSON PACHECO-SERRANT, M.D.

## BROWNSVILLE MEDICAL CENTER

**PATIENT:** VEGA, ANGIE
**NUMBER:** 99082
**PHYSICIAN:** HELSON SERRANT-PACHECO, M.D.
**DATE OF OP:** 03/9/99
**ROOM NO:**
**AGE:** 33
**SEX:** F

## OPERATIVE REPORT

PREOPERATIVE DIAGNOSES:

POSTOPERATIVE DIAGNOSES:

OPERATION:

SURGEON: HELSON SERRANT-PACHECO, M.D.

INDICATIONS FOR THE SURGERY: This is a 33-year-old patient status post laminectomy for L5-S1 disk back in September. The patient was evaluated and found with recurrent symptoms on the right leg. Repeated MRI revealed recurrence of the herniated disk at L5-S1.

DESCRIPTION OF OPERATION:
Under sterile and controlled conditions, the patient under general endotracheal anesthesia in the prone position using the Cloward Frame with the pressure area padded, the previous incision area was scrubbed and draped in the usual manner. The previous wound was opened and revision of the previous laminectomy was done. The L5-S1 laminectomies were slightly distended. The nerve root was identified and retracted medially. The previous disk space was entered and the recurrent level disk was removed using various rongeurs. A large disk fragment was identified and removed. Copious irrigation with antibiotic solution was done. Hemostasis was completed. Epidural block with Fentanyl was left in place. The wound was closed in anatomical layers using Vicryl 2-0 and staples for the skin layer. Estimated blood loss was 50 cubic centimeters. The patient tolerated the procedure well.

#0427
DD: 03/9/99
DT: 03/10/99
nph

_____
HELSON SERRANT-PACHECO, M.D.

```
PATIENT:          VEGA, ANGIE M
NUMBER:           0020347
PHYSICIAN:        HELSON PACHECO-SERRANT, M.D.
DATE OF OP:       03/11/2002
ROOM#:            01302
AGE:
SEX:              F
```

## OPERATIVE REPORT

**PREOPERATIVE DIAGNOSIS:**   HERNIATED DISKS, L3-4, L4-5, L5-S1, WITH RADICULOPATHY INSTABILITY.

**POSTOPERATIVE DIAGNOSIS:**   HERNIATED DISKS, L3-4, L4-5, L5-S1, WITH RADICULOPATHY INSTABILITY.

**OPERATION:**   POSTERIOR LUMBAR DECOMPRESSION FROM L3 TO S1, BILATERAL, WITH L3-4, L4-5, L5-S1 DISKECTOMIES, INTERBODY FUSION, INSTRUMENTATION WITH PEDICLE SCREWS, POSTEROLATERAL FUSION, PULSE LAVAGE, C-ARM, DURAL GRAFT.

**SURGEON:**   HELSON PACHECO-SERRANT, M.D.
**ASSISTANT:**   ALEJANDRO BETANCOURT, M.D..

**ANESTHESIA:**   GENERAL ENDOTRACHEAL.
**ANESTHETIST:**   KEVIN HARBOURNE, M.D..

**ESTIMATED BLOOD LOSS:**   750 CC.

It was a medical necessity to successfully complete this procedure to have Dr. Alejandro Betancourt as the first assistant.

**DESCRIPTION OF OPERATION:** Under sterile conditions, the patient was given general endotracheal anesthesia. She was placed in the prone position with pressure points well padded using pelvic and chest rolls. The lower back area was scrubbed and draped in the usual manner. The previous incision was extended distally and caudally. Dissection was continued with electrocautery until exposure of the spinous process of L3, L4, L5, and S1 was done. Exposure of the lamina bilaterally at those levels was also done with electrocautery and exposure of the transverse process of L3, L4, L5, and S1 was done bilaterally.

The posterolateral spaces were drilled to prepare for posterolateral fusion. Self-retaining retractors were brought into the field and a posterior lumbar decompression from L3 to S1 was done bilaterally. This decompression was extremely difficult at the level of L5-S1 where the patient has had previous surgery. Multiple scar tissue areas and a calcified interspace was identified which made for a very difficult interbody fusion at that level.

CONTINUED....OPERATIVE REPORT

PATIENT:     VEGA, ANGIE M

PHYSICIAN:   HELSON PACHECO-SERRANT, M.D.

OPERATIVE REPORT/CONT. PAGE 2

At the level of L5-S1, a bilateral diskectomy had to be done removing large calcified pieces of disk and annulus until the bilateral spaces were prepared with chisels to receive the interbody fusion. The 9 mm tangent bones were placed in the interbody fusion at the appropriate interspace after difficult dissection. The procedure was repeated at the level of L4 and also at L3 where complete total diskectomies were done with a #11 blade and at these levels disk material was removed. Interbody fusions were also done with tangent bones at both of those levels. Copious irrigation with antibiotic water was done. Hemostasis was achieved. The dural laceration was repaired with a dural graft and Hemaseel.

Pedical screw instrumentation was done where 7.5 x 40 mm screws were placed at the level of L3 bilaterally, L4 bilaterally, and L5 bilaterally, and to the sacrum 35 mm x 7.5 mm screws were placed. Good position of the screws was identified by intraoperative C-arm and x-ray. Two rods were used to connect the system and a crosslink in addition to that. Copious irrigation with antibiotic water was done and hemostasis was achieved. A posterolateral fusion was done with the patient's allograft bone and bone matrix.

Pulse lavage was used to clean the wound. The paraspinous muscles were infiltrated with Marcaine and a epidural block with fentanyl was left in place. The wound was closed in anatomical layers using #0 Vicryl, 2-0 Vicryl, 2-0 PDS, and staples for the skin. A subcutaneous drain was left in place. Estimated blood loss was 750 cc. The patient received one unit of blood. The patient tolerated the procedure well.

#5351
D:  03/12/2002  07:33
T:  03/12/2002  16:15
TR: MEDQ

_____
HELSON PACHECO-SERRANT M.D.